OPINION OF THE COURT
Allan Dixon, J.
The respondent, who is the father of the child who is the center of this custody controversy, filed a petition, dated March 17, 1982, requesting that he be awarded primary physical custody of Lakee. An order of this court, dated June 9, 1980, had awarded joint custody of the child to the parties with the infant’s principal residence being with the mother. By an earlier petition, dated September 12, 1980, the respondent had moved to modify the prior order claiming there was a substantial change of circumstances in that the petitioner was cohabiting with a member of the opposite sex. After a full hearing this court rendered a written decision dismissing the respondent’s petition and continuing the June 9, 1980 order.
*491 The respondent’s most recent petition again requests a modification of the order based on a substantial change in circumstances. Among other things, it recites:
That on or about September 12, 1981 the said Linda Vanier Hatz, the mother of said infant, was seriously and permanently injured in an automobile/motorcycle accident rendering the said Linda Vanier Hatz a paraplegic.
That since on or about the said 12th day of September, 1981 as a result of the injury and hospitalization of the child’s mother, the said Linda Vanier Hatz, as aforesaid, actual physical custody of the infant, Lakee Hatz, has been with her father, your petitioner, Henry Hatz, subject to certain rights of visitation of the infant’s mother, Linda Vanier Hatz, pursuant to the agreement and stipulation of the attorneys for the respective parties and of the infant’s Law Guardian, made before this court on October 30,1981.
That the said Linda Vanier Hatz, the mother of said infant, has been hospitalized since the date of the said accident on or about September 12, 1981 and, upon information and belief, remains hospitalized at the present time.
That on March 10, 1982, however, the attorney for the infant’s mother informed your petitioner’s attorney by letter that the child’s mother, Linda Vanier Hatz, intends to reassert and resume her primary physical custody of the said infant on or about March 26, 1982.
That your petitioner verily believes that the present physical condition of the infant’s mother, Linda Vanier Hatz, renders it impossible for the said Linda Vanier Hatz adequately to exercise the custody, supervision and control of the said infant, Lakee Hatz.
That your petitioner further verily believes that the physical accommodations proposed by the mother Linda Vanier Hatz for the child are totally unsuitable and inadequate inasmuch as the indicated premises occupied by the mother’s brother and his wife and their two children consists, in all, of only a three-bedroom apartment.
That your petitioner further verily believes that it would be unduly and unnecessarily disruptive of the said child’s educational, emotional and social development to change *492 the child’s residence at this time and thereby sever her from her friends and acquaintances and making it difficult, if not impossible, for her to continue her participation in afterschool religious instruction classes and in her extracurricular sporting and girl scout activities.
The primary thrust of respondent’s argument centers on the petitioner’s disability and her alleged dependency on others for care and housing. He also attempted to show the improvement the child had exhibited while living with him. Petitioner, meanwhile, attempted to show the progress she has made in coping with her disability and present a picture of a woman able to care for her child and nurture that child’s growth.
The issue as to whether a handicapping condition is a sufficient change of circumstance to justify a switch in custody is a new one for this court to decide. In fact, there appears to be a paucity of law nationally on this specific issue. In a California case it was decided by the Supreme Court of California that the trial court erred in awarding custody to the mother on the basis that the father’s physical handicap would prevent a “normal” father-son relationship.
In the California case the father had served as custodial parent since 1972. In 1976, he suffered an accident which left him a quadriplegic. In 1977, the mother filed a custody petition which resulted in her being awarded custody. In reversing this decision the court stated: “if a person has a physical handicap it is impermissible for the court simply to rely on that condition as prima facie evidence of the person’s unfitness as a parent or of probable detriment to the child; rather, in all cases the court must view the handicapped person as an individual and the family as a whole. To achieve this, the court should inquire into the person’s actual and potential physical capabilities, learn how he or she has adapted to the disability and manages its problems, consider how the other members of the household have adjusted thereto, and take into account the special contributions the person may make to the family despite — or even because of — the handicap.” (Carney v Carney, 24 Cal 3d 725, 736.)
*493 This court feels that adopting the standard of the California Supreme Court is appropriate and keeps in mind the fact that we are dealing with a person with a physical condition which must be adjusted to and not a nonfunctioning being.
In that regard, the petitioner presented evidence designated to show her adjustment to her condition. In the accident she suffered a fractured spine and bilateral fracture of the lower extremities. These injuries left her paralyzed below the fifth and sixth thorasic area. Radu J. Ghiulamila, M.D., chairman of the department of physical medicine and rehabilitative medicine, Albany Medical Center Hospital, testified as to the progress she was making in coping with her handicapping condition. He stated that after the initial depression associated with such a debilitating injury she “decided to overcome the problem and she did.” He could see no physical reason why she could not satisfactorily carry out the responsibilities of a custodial parent. Doctor Ghiulamila’s testimony was reinforced by Michael Hurley, a staff physical therapist, who worked closely with Mrs. Hatz through her rehabilitation. He recounted the therapy she underwent and her remarkable progress.
This court is convinced that Linda Hatz has made the physical adjustment to her condition and that she would be able to care for her daughter. The court is concerned with an aspect of the case pointed out by Aaron Hoorwitz, Ph. D., Staff Psychologist of the Family Court Unit of Unified Services for Children and Adolescents of the Rensselaer County Department of Mental Health. Dr. Hoorwitz’ testimony expresses concern for Lakee’s adjustment to her mother’s condition. The first time he met with the child she was not making this adjustment well. She could not accept her mother’s disability. Dr. Hoorwitz did venture the opinion that Lakee needed an opportunity to come to grips with her mother’s handicapping condition. He did not think it fair to take her away from the situation and possibly miss the opportunity to adjust to this painful event in her life. This adjustment would be more likely to occur were the child to live through the situation rather than be taken away from it.
*494 Combining this factor with the success Mrs. Hatz has had in dealing with her condition and applying the standard, cited above in this decision, this court feels there is no reason to change the order of this court regarding custody of Lakee. Therefore, the modification petition of the respondent is dismissed and the order of June 9, 1980 be continued.
One final issue which must be resolved has to do with a request by the attorney for the petitioner for counsel fees. Such a request is governed by section 438 of the Family Court Act. That section states: “In any proceeding under this article, including proceedings for support of a spouse and children, or for support of children only, or at any hearing to modify or enforce an order entered in that proceeding or a proceeding to modify a decree of divorce, separation, or annulment, including an appeal under article eleven, the court may allow counsel fees at any stage of the proceeding, to the attorney representing the spouse, former spouse or person on behalf of children.”
Also, subdivision (b) of section 237 of the Domestic Relations Law states in regard to counsel fees: “Upon any application to annul or modify an order or judgment for alimony or for custody, visitation, or maintenance of a child, made as in section two hundred thirty-six or section two hundred forty provided, or upon any application by writ of habeas corpus or by petition and order to show cause concerning custody, visitation or maintenance of a child, the court may direct a spouse or parent to pay such sum or sums of money for the prosecution or the defense of the application or proceeding by the other spouse or parent as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties. With respect to any such application or proceeding, such direction may only be made in the order or judgment by which the particular application or proceeding is finally determined. Any applications for counsel fees and expenses may be maintained by the attorney for either spouse in counsel’s own name in the same proceeding.”
Counsel for the respondent argues that counsel fees cannot be awarded without a full evidentiary hearing. Supporting this stance he cites a number of Second Depart *495 ment cases which hold that such a hearing should be held. These cases are distinguishable, however. All of them involve awards of counsel fees made as part of final judgments in matrimonial actions in Supreme Court. There is quite a difference between a final decree in a matrimonial action and the modification petition which brought about this action. Since Family Court has continuing jurisdiction over this order and may terminate, enforce or modify at any time, such an order is quite a bit different from a final decree of divorce.
Additionally, this court takes great pains to evaluate such requests. Such evaluations are accomplished through analysis of affidavits submitted by the attorneys for the parties as to services rendered and time spent on rendering such services. This court also requests that the parties submit financial disclosure affidavits as to their means. Only after a complete analysis will an award be made. To require a full evidentiary hearing seems redundant, particularly since the court is well aware of the facts and circumstances of the parties through their numerous appearances before the court. Such a hearing would also put an increased burden on this court’s ever expanding calendar of cases.
The Family Court is granted discretion in awarding counsel fees. In awarding counsel fees the court should consider, among other things, the time devoted to the legal services, the nature and difficulty of the problem, the results obtained, the financial circumstances of the parties, the amount of money or other interests and the benefits sought for the client. (Reisch v Reisch, 85 Misc 2d 107.) Keeping these matters in mind, the court believes the respondent should pay the sum of $600 to petitioner’s attorney as and for counsel fees. This amount may be paid in six installments of $100 each month, commencing with December 1, 1982 and continuing until paid in full.
Submit order in compliance with the official forms of the Family Court with payments for counsel fees being made to the Rensselaer County Support Collection Unit for remittance to William P. McGovern, III, attorney for the petitioner.